THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RAMIRO MARQUEZ DURAN,<br><br>Plaintiff,<br><br>v.<br><br>SGT. COLBERT et al.,<br><br>Defendants. | **MEMORANDUM DECISION &**<br>**ORDER ON MOTIONS TO DISMISS**<br><br>Case No. 2:16-CV-805 CW<br><br>District Judge Clark Waddoups |

In filing this pretrial detainee civil-rights action, Plaintiff was granted *in forma pauperis* status, (ECF Nos. 1, 3-4). *See* 28 U.S.C.S. § 1915 (2022); 42 *id.* 1983.[1] The Second Amended Complaint (SAC) is currently being litigated by the parties. (ECF No. 105.) This Order grants the two pending motions to dismiss. (ECF Nos. 106, 128.) Still, this case survives this Order.

The SAC names these defendants: Salt Lake County (SLC) and SLC's Mobile and Critical Incident Response Team (MCIRT) officers Eric Bennett, Bradley Johnson, Natalee Laughlin, Cameron St. Louis, and Ty Thorton. (ECF No. 105.) Plaintiff asserts the individual MCIRT defendants violated the Fourteenth Amendment by using excessive force against him in a single incident while he was detained in SLC jail. (*Id.*) And, as to that alleged use of excessive force, under a municipal-liability theory, Plaintiff also asserts the MCIRT defendants acted

---

[1] This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2022).

consistent with Defendant SLC's allegedly unconstitutional customs, policies, and practices, and that SLC failed to adequately train the MCIRT defendants. (*Id.*)

First, for failure to state a claim upon which relief may be granted, Defendant SLC moves to dismiss the claims against it of unconstitutional customs, policies, and practices, and failure to train. (ECF No. 106.) Second, the MCIRT defendants move for dismissal based on Plaintiff's failure to properly serve the SAC upon them. (ECF No. 128.)

## I. SLC'S MOTION TO DISMISS

### A. Standard of Review

When deciding if a complaint states a claim upon which relief may be granted, a court takes all well-pleaded factual statements as true and regards them in a light most favorable to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is fitting when, viewing those facts as true, a plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). Plaintiff has the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest'" entitlement to relief. *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," a court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55); *see also Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (stating complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" (alterations omitted)). In other words, "the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

"'The usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss.'" *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). So, for example, when Plaintiff mentions in his response here that videos of this excessive-force incident are available for the Court to see, (ECF No. 113, at 3), Plaintiff ignores the Court's task to stay within the four corners of the SAC.[2] *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

---

[2] Plaintiff also errantly chides Defendant SLC for not making this a summary-judgment motion instead, saying Defendant SLC

> seek[s] a ruling on these fact issues . . . because counsel knows that once discovery is complete, including depositions of the individual defendants, the existence of an improper policy and practice, rather than rogue conduct, will likely be established from the direct testimony of the individual defendants. This discovery is being pursued and until concluded, the case is not in a posture to rule on these factual issues . . . .

(ECF No. 113, at 3.)

But Defendant SLC is not asking the Court to make factual findings here; it is instead asking the Court to conclude that Plaintiff has not made sufficient factual allegations to support the elements of each of his causes of action against SLC.

As another example of Plaintiff's mistaken characterization of this motion, he argues, "[W]ithout discovery, the following critical question can't be resolved: Was the MCIRT Team's extraction here normal practice or did the individual defendants act on their own, contrary to training and practice?" (*Id.* at 3-4.) However, the critical question here really is--again--whether Plaintiff has alleged facts within the SAC that adequately support the claims he raises against SLC.

If the SAC's allegations were deemed adequate to withstand a motion to dismiss, *then* a motion for summary judgment, supported by evidence regarding factual issues, would be appropriate.

### B. Municipal Liability

In *Monell v. Department of Social Services*, the Supreme Court held that "person," as used in § 1983, includes "municipalities and other local government units"--i.e., "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. 658, 691 & n.54 (1978). A local government may be liable for damages under § 1983 solely if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Id.* at 694. Thus, the Supreme Court requires "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). This ensures "that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," instead of deeming the municipality liable merely because its employee violated the Constitution. *Id.*; *see also Monell*, 436 U.S. at 692 (holding local governments may not be sued under § 1983 on *respondeat superior* theory).

The applicable policy or custom may fall into one of these five categories:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions--and the basis for them--of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks

omitted). Still, whichever category of policy or custom is asserted,

> [t]he plaintiff must also demonstrate that, through
> its *deliberate* conduct, the municipality was the "moving force"
> behind the injury alleged. That is, a plaintiff must show that the
> municipal action was taken with the requisite degree of culpability
> and must demonstrate a direct causal link between the municipal
> action and the deprivation of federal rights.

*Bryan Cnty.*, 520 U.S. at 404 (emphasis in original).

### 1. Claim of "Other Unconstitutional Customs, Policies, or Practices"

### a. The parties' arguments

Under his "Claim Against Municipal Entity [SLC] for Other Unconstitutional Customs,

Policies, and Practices," Plaintiff asserts, as to the alleged excessive-force violation here:

(1) The individual MCIRT defendants "acted pursuant to, and consistent with, established

policies, practices, and customs of" SLC. (ECF No. 105, at 34.)

(2) SLC has

> a policy, practice, or custom of, among other things, routinely using
> excessive, unreasonable, and punitive force against pre-trial
> detainees, including by using such force under the guise of needing
> to move such detainees for their own or others [sic] safety or to
> unnecessarily aid such detainees, when such detainees demonstrate
> no reasonable threat to officers, other inmates, themselves, or the
> orderly function of the Jail.

(*Id.*)

(3) SLC has "a practice, policy, and custom of moving individuals, claiming the reason is

a failure to comply with instructions, in circumstances where the individual is not a threat to

anyone else." (*Id.*)

(4) By using and allowing the above policies, practices, and customs, SLC has shown "deliberate indifference toward the proper training, equipping, and supervision of its employees"[3] and caused Plaintiff's injuries. (*Id.* at 34-35.)

Defendant SLC moves for this claim's dismissal, arguing: (a) Plaintiff's claim is a "textbook example[] of a formulaic recitation of the elements of a cause of action, devoid of further factual enhancements." (ECF No. 106, at 5.) And, (b) Plaintiff may not validly extrapolate from the allegation of his "single incident of unconstitutional" excessive force that SLC had a custom or practice of widespread excessive force, *see Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). (*Id.* at 9.)

Plaintiff responds with the circular argument that

> the simple fact that the MCIRT Team executed [a] previously requested cell extraction, even though Marquez-Duran was alone and physically incapable of being a threat at the time that extraction happened . . ., demonstrates that completing extractions 'in circumstances where the individual is not a threat' is standard County policy,

(ECF No. 113, at 4 (quoting Complaint, ¶ 173).)[4] *See Waller*, 932 F.3d at 1290 (stating "[w]e are not persuaded by [Plaintiff's] argument that we can infer the existence of such a custom or practice because nothing else would explain why [Defendant] would brazenly launch a wholly unprovoked attack on a detainee").

---

[3] Plaintiff refers to failure to train in this cause of action, but that claim is treated later in this memorandum decision. Failure to train is thus not discussed further in this section.

[4] Under this hollow logic, in every case in which a plaintiff alleges unconstitutional behavior by local government actors, that unconstitutional behavior will automatically support a claim against the local government for unconstitutional policy, practice, or custom; in other words, one episode implies municipal policy, practice, or custom.

Plaintiff goes on to assert that though

> plaintiffs may offer evidence of "similarly situated individuals
> [that] were mistreated by the municipality in a similar way," *see
> Est. of Valverde by & through Padilla v. Dodge*, No. 16-CV-1703-
> MSK-MEH, 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017)
> (citation omitted), **at the pleading stage**, additional examples **are
> not required**. *See Ward v. City of Hobbs*, 398 F. Supp. 3d 991,
> 1042 (D.N.M. 2019).

(ECF No. 113, at 7 (alteration and emphasis in original).)

Finally, Plaintiff states, "Given the likelihood the MCIRT Team members will testify they were only following policy--the Court cannot dismiss as speculative the Complaint's founded allegations that the County frequently completes cell extractions of individuals who present no safety or operational risk." (*Id.* at 8.) First, there is nothing in the Complaint that supports Plaintiff's assertion that the Complaint's allegations are "founded." Second, Plaintiff is again relying on potential future discovery to rescue the inadequacies in his attempt to allege facts stating a claim upon which relief may be granted. As explained above, the Court's role here is not to get ahead of this stage of litigation, in which the sole question is whether the factual allegations stated equate to the elements of a cause of action.

Problematically, in the SAC, Plaintiff does not "identify which theory []he believes underpins this claim." *Cuervo v. Sorenson*, No. 20-CV-671, 2022 U.S. Dist. LEXIS 181743, at *18 (D. Colo. Oct. 4, 2022). Plaintiff "relies on the Court to review [the SAC's 176 paragraphs], decide which paragraphs support any one of the . . . possible *Monell* theories, and determine whether they sufficiently state a claim." *Id.* at *19. But, the Court "is not charged with making the parties' arguments for them." *Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007).

### b. Applicable legal standards and analysis

Still, though Plaintiff does not clarify under which of four categories of municipal liability this claim is brought, the Court examines them each in turn. Again, failure to train is examined by itself in the next section.

**Formal policy**. First, Plaintiff does not mention a formal regulation or policy statement of SLC. And because the main policy, practice, or custom referred to in the SAC is set forth as

> routinely using excessive, unreasonable, and punitive force against
> pre-trial detainees, including by using such force under the guise of
> needing to move such detainees for their own or others [sic] safety
> or to unnecessarily aid such detainees, when such detainees
> demonstrate no reasonable threat to officers, other inmates,
> themselves, or the orderly function of the Jail,

it is ludicrous to think that such a damning statement about use of force could possibly be a formal policy. (ECF No. 105, at 34.) Clearly, this category is inapplicable here and not discussed further.

**Employees with final policymaking authority**. So the Court turns to a second possible *Monell* theory: whether Plaintiff's allegations adequately aver unconstitutional "decisions of employees with final policymaking authority." *Bryson*, 627 F.3d at 788. Here, the Court assumes that Defendant SLC has "final policymaking authority." And, Plaintiff neither alleges an individual employee had final policymaking authority, nor that "a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by" SLC. *St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). The latter would be as absurd as the idea in the above paragraph of SLC formally declaring that an "excessive, unreasonable, and punitive [use of] force against pretrial detainees" is explicit County policy. Then again, Plaintiff has not alleged "a series of decisions by a subordinate official manifested a 'custom or usage' of which

[SLC] must have been aware." *Id.* On the other hand, Plaintiff has not argued that he seeks to impose municipal liability based on a single incident and thus has not alleged "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-85 (1986)).

Further, Plaintiff has not asserted facts from which it could be determined that a final policy was decided. *See Cuervo*, 2022 U.S. Dist. LEXIS 181743, at *22. Plaintiff possibly argues that the MCIRT defendants' choice to use excessive force in the holding cell was a "final policy decision," but he does not aver any facts that would support the Court (a) in assessing whether that choice was a "final policy decision" by individual defendants (who are not purported to have the authority to decide final policy) or Defendant SLC, or (b) in determining that SLC "delegated final policy authority to any [other] Defendant." *Id.* at *21-22. Most telling, even assuming SLC is the "final policymaker" for § 1983 purposes, Plaintiff fails to allege any conduct by SLC itself, apart from the conduct of MCIRT defendants, nor does he allege that SLC tacitly approved MCIRT defendants' described use of unconstitutional excessive force. *See Moss*, 559 F.3d at 1169. Plaintiff's allegations thus fail to state a claim under the second *Monell* scenario.

**Ratification**. Third, under *Monell*, a municipality may be liable if a final policymaker "ratifies" a subordinate's unlawful conduct or decision and the basis for the conduct or decision. *See Sodaro v. City & Cnty. of Denver*, No. 21-CV-1879-WJM-STV, 2022 U.S. Dist. LEXIS 170904, at *32 (D. Colo. Sept. 21, 2022). But, none of the SAC's allegations would support a conclusion that a final municipal policymaker ratified the conduct alleged in the SAC. *See Cuervo*, 2022 U.S. Dist. LEXIS 181743, at *22-23. And, Plaintiff's motion-to-dismiss

response does not even argue that Plaintiff has pleaded facts suggesting SLC ratified MCIRT defendants' actions. He identifies no paragraphs in the SAC supporting a ratification theory. (*Id.* at 6-7.) And, he cites no case law in support of a ratification theory.

For the reasons stated in this paragraph, the Court also concludes Plaintiff has failed to state a *Monell* claim under a ratification theory.

**Informal custom or practice**. Because the fifth *Monell* theory--failure-to-train--is addressed in its own section below, the last *Monell* theory considered in this section regards "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788; *Bryan Cnty.*, 520 U.S. at 404 ("[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (internal quotation marks omitted)); *see also Praprotnik*, 485 U.S. 112, 127 (1988) (establishing informal policy or custom requires plaintiff to show misconduct was widespread--i.e., involved series of decisions).

To adequately state a claim that SLC is liable here, based on informal custom or practice, Plaintiff must allege:

> (1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit approval of such misconduct by the municipality's policymaking officials after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). And to adequately establish existence of such a continuing, persistent and widespread custom, Plaintiff must typically allege facts "suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

"With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct . . . or use other evidence, such as a police officers' statements attesting to the policy's existence." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015). Plaintiff has done neither, thus by itself warranting dismissal of this claim. *See Waller*, 932 F.3d at 1290 (concluding allegations "describing only one similar incident . . . fall far short of plausibly alleging a 'widespread practice'"); *Carney*, 534 F.3d at 1274 ("In attempting to [show] the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly [allege facts] suggesting that similarly situated individuals were mistreated by the municipality in a similar way."); *Huff v. City of Aurora*, No. 21-CV-2715-RMR-NRN, 2022 U.S. Dist. LEXIS 164154, at *35 (D. Colo. Sept. 12, 2022) (dismissing informal-custom claim when plaintiff did not "point to specific incidents . . . where similarly situated individuals were mistreated in the same manner").

Regarding the deliberate-indifference and causation elements, Plaintiff gives mere lip service to the stating of a claim, baldly asserting that, by using and allowing the policy, practices, and customs--as he has articulated them in the SAC--SLC has shown "deliberate indifference toward the proper training, equipping, and supervision of its employees" and caused Plaintiff's injuries. (ECF No. 105, at 34.) This statement is devoid of specific factual allegations that would

link SLC to an appropriate "state of mind" and the needful "rigorous standards of culpability and causation . . . to ensure [SLC] is not held liable solely for the actions of its employee." *See Hernandez v. City and Cnty. of Denver*, No. 21-CV-1538-PAB-MEH, 2022 U.S. Dist. LEXIS, at *8-10 (D. Colo. Aug. 23, 2022) (quoting *Brown*, 520 U.S. at 405; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).

In summary, Plaintiff "has not plausibly pled a practice so 'permanent and well settled as to constitute a custom or usage with the force of law,' such that the Court can infer 'the existence of . . . a continuing, persistent and widespread custom.'" *See Hernandez*, 2022 U.S. Dist. LEXIS, at *20 (quoting *Bryson*, 627 F.3d at 788; *Carney*, 534, F.3d at 1274). Plaintiff thus fails to state a claim regarding this theory of municipal liability.

### 2. Claim of Failure to Train

Under his failure-to-train claim, Plaintiff asserts that, regarding the alleged excessive force violation here: (1) The individual MCIRT defendants "acted pursuant to, and consistent with," "their training by" and "established policies . . . practices and customs of" SLC. (ECF No. 105, at 33.) (2) SLC "demonstrated deliberate indifference toward the proper training . . . of its employees." (*Id.*) (3) SLC's actions "were a proximate cause of the injuries . . . sustained by [Plaintiff]." (*Id.*)[5]

Defendant SLC moves for this claim's dismissal, arguing: (a) "Plaintiff's claim fails to allege facts sufficient to meet . . . the[] elements" of a failure-to-train cause of action. (ECF No. 106, at 6.) (b) "The allegations . . . do not inform the Court or the County what exactly it was that

---

[5] One more specific allegation in the SAC regarded only Defendant Johnson's training: "Defendant Johnson . . . had received training on the physical and psychological effects of [pepper s]pray exposure and [was] aware of the decontamination remedy (cold water)," (*id.* at 20), but this allegation is irrelevant to the stating of the failure-to-train claim.

the County should have done but failed to do." (*Id.*) (c) SAC lacks factual allegations supporting Plaintiff's assertion that SLC was deliberately indifferent. "Instead, he simply asserts that the County 'demonstrated deliberate indifference toward the proper training . . . of its employees . . . .' But this allegation is precisely the type of formulaic recitation of the elements that fails to meet the Rule 12(b)(6) standards." (*Id.*)

Plaintiff responds merely, "The issue of whether officers were adequately trained to not use force to move a detainee when the reason for the move had dissipated and calm had been restored for over eight minutes is a factual issue that must await depositions of the individual defendants regarding their actual training." (ECF No. 113, at 12.)

However, the standard on a motion to dismiss is whether the complaint's allegations support an asserted cause of action, not whether evidence that may be discovered in the future could support an asserted cause of action. So, when Plaintiff cautions the Court that "discovery is being pursued and until concluded, the case is not in a posture to rule on these factual issues, especially under a motion to dismiss standard," he mistakes the Court's role. (ECF No. 113, at 3.) The Court is not making factual findings here, but is instead viewing the facts alleged by Plaintiff, in the light most favorable to Plaintiff, to determine whether those factual allegations support a cause of action. And, Plaintiff himself recognizes that, to survive a motion to dismiss, he must have pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 6 (quoting *Iqbal*, 556 U.S. at 678).)

### a. Applicable legal standards

The Court now reviews the basics of a failure-to-train claim against a municipality. It is true that "[i]n limited circumstances, a local government's decision not to train certain employees

about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a

claim turns on failure to train." *Id.* (citing *Okla. City v. Tuttle*, 471 U.S. 808, 821-22 (1985)

(plurality opinion) (stating policy of inadequate training "is far more nebulous, and a good deal

further removed from the constitutional violation, than was the policy in *Monell*")). To satisfy §

1983, "[a] showing of simple or even heightened negligence will not suffice." *Bryan Cnty.*, 520

U.S. at 407. Instead, "a municipality's failure to train its employees in a relevant respect must

amount to 'deliberate indifference to the rights of persons with whom the [untrained employees]

come into contact.'" *Id.* (alteration in original) (quoting *Canton*, 489 U.S. at 388).

      The deliberate-indifference standard is "stringent," "requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. For a

municipality to be "deemed deliberately indifferent," it must be shown that the municipality's

"policymakers are on actual or constructive notice that a particular omission in their training

program causes . . . employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.

This means that the municipality does nothing to improve training, while knowing that its

training "program will cause constitutional violations," which "'is the functional equivalent of a

decision by the city itself to violate the Constitution.'" *Id.* at 61-62 (quoting *Canton*, 489 U.S. at

395). A less strict fault standard "would result in *de facto respondeat superior* liability on

municipalities." *Canton*, 489 U.S. at 392.

      "A pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563

U.S. at 62. A showing that policymakers persisted with an approach that was known (or should have been known) not to prevent employees' tortious conduct may establish deliberate indifference, "the conscious disregard [of] consequences." *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Also, the presence "of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bryan Cnty.*, 520 U.S. at 407-08.

However, *Canton* left open "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations." *Id.* at 409. Indeed, the Supreme Court in *Canton* "hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Id.* The Court further posited that "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice--namely, a violation of a specific constitutional or statutory right." *Id.* Importantly, "the high degree of predictability may also support an inference of causation--that the municipality's indifference led directly to the very consequence that was so predictable." *Id.* at 409-10. The relevant question in this situation is "[w]ould the injury have been avoided had

the employee been trained under a program that was not deficient in the identified respect?"
*Canton*, 489 U.S. at 391.

Of course, "[i]n virtually every instance where a person has had his . . . constitutional
rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city
'could have done' to prevent the unfortunate incident." *Canton*, 489 U.S. at 392. Indeed, merely
alleging "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten
liability on the city, for the officer's shortcomings may have resulted from factors other than a
faulty training program." *Id.* at 390-91. For instance, it could be "that an otherwise sound
program has occasionally been negligently administered." *Id.* at 391. Nor will it suffice to allege
that an injury could have been prevented if the officers "had better or more training, sufficient to
equip [them] to avoid the particular injury-causing conduct." *Id.* The latter could be said of
"almost any encounter resulting in injury, yet not [necessarily] condemn the adequacy of the
program to enable officers to respond properly to the usual and recurring situations with which
they must deal." *Id*. And certainly, properly trained officers sometimes err, but "the fact that they
do says little about the training program or the legal basis for holding the city liable." *Id.*

### b. Analysis of whether Plaintiff's allegations state a claim

Having reviewed the law vis-à-vis Plaintiff's allegations on his failure-to-train claim
against SLC, the Court concludes Plaintiff has failed to state a claim upon which relief may be
granted. First, Defendant SLC is correct that Plaintiff's allegations are "precisely the type of
formulaic recitation of the elements that fails to meet the Rule 12(b)(6) standards." (ECF No.
106, at 6.) In fact, Plaintiff does *nothing but* recite selected rote elements of a failure-to-train

claim and flatly assert that Defendant SLC met the selected elements. Plaintiff alleges no facts *particular to this case* that meet the claim's elements.

Further, fatal to his attempt to state a claim of failure to train, Plaintiff has not alleged existence of "a pattern of prior similar misconduct." *Waller*, 932 F.3d at 1285-86, 1288 ("[Plaintiff] argues that he has shown the necessary pattern of similar constitutional violations to establish deliberate indifference here. However, we are not persuaded that the factual allegations in [the] complaint [are] sufficient to make this showing.").

Neither has Plaintiff alleged that "'the need for more or different training [was otherwise] so obvious [or highly predictable], and the inadequacy so likely to result in the violation of constitutional rights, that the [county's] policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Waller*, 932 F.3d at 1284-86, 1288 (quoting *Canton*, 489 U.S. at 390); *Quintana v. Adair*, 673 F. App'x 815, 820-21 (10th Cir. 2016) (unpublished) (agreeing plaintiff "failed to plead facts that the need for more or different training was so obvious that a violation of his civil rights was likely to result from not providing it [and i]nstead alleged conclusory allegations of deliberate indifference, which are insufficient to state a claim for relief"). Rather, Plaintiff alleges but a single conclusory sentence regarding deliberate indifference: "Salt Lake County . . . demonstrated deliberate indifference toward the proper training . . . of its employees," (ECF No. 105, at 33). This is inadequate. *See Medrano-Alvarez v. CoreCivic, Inc.*, No. 22-151 RB/LF, 2022 U.S. Dist. LEXIS 224205, at *9 (D.N.M. Dec. 13, 2022) (concluding plaintiff's conclusory allegations need not be accepted as true because they suggested "neither a pattern of similar instances nor other evidence, such as statements from police officers or other [agency] insiders, or written training materials or oral commands" and

"[s]uch support is necessary" because plaintiff "must plead facts that, if true, give rise to a plausible inference that the policy he alleges exists"); *Estate of Tyler Kracht v. City of Sterling*, No. 22-CV-1081-NYW-STV, 2022 U.S. Dist. LEXIS 200689, at *18 (D. Colo. Nov. 3, 2022) (concluding general allegations failed "to sufficiently state a municipal liability claim under a failure to train . . . theory" because complaint contained "no specific factual allegations which plausibly establish [defendant] had actual or constructive notice that its current training policies, or any lack of training . . ., was substantially certain to result in a constitutional violation" and plaintiff proffered no "specific facts regarding . . . officer's training," like "how the individual defendants were trained, who they were trained by, why their training was deficient, or what [defendant's] training includes and how it has changed since [an] alleged pattern began"); *Rogacki v. Jefferson Cnty.*, No. 1:21-CV-2281-CNS-KLM, 2022 U.S. Dist. LEXIS 197757, at *34 (D. Colo. Oct. 31, 2022) (concluding plaintiff failed to state failure-to-train claim when "allegations contain[ed] no factual content showing . . . County had any of its own training protocols, inadequate or otherwise, that the Jail's . . . personnel received, or any specific tools [the] County itself provided or failed to provide the Jail's . . . staff"); *Starr v. Hayden*, No. 20-3302-SAC, 2021 U.S. Dist. LEXIS 40512, at *6 (D. Kan. Mar. 3, 2021) ("Coming forward with no facts about any policy or training involved here, the plaintiff's allegations of failure to train are nothing more [than] conclusory and speculative statements. Without something more about the training and policies, the plaintiff's bald allegations against the supervisory defendants fail to state a claim.").

In conclusion, it is clear that Plaintiff has not alleged that this case falls "within the narrow range of "single-incident" liability hypothesized in *Canton* as a possible exception to the

pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train." *Bryan Cnty.*, 520 U.S. at 409 (discussing Supreme Court's hypothesis in *Canton* "that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations"). Nor has Plaintiff alleged "a pattern of similar violations that would 'establish that the "policy of inaction" [was] the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 72 (alteration in original) (quoting *Canton*, 489 U.S. at 395 (opinion of O'Connor, J.)). Due to Plaintiff's failure to adequately allege facts supporting each element of a cause of action, Defendant SLC's motion to dismiss Plaintiff's failure-to-train claim is granted.

## II. MCIRT DEFENDANTS' MOTION TO DISMISS

MCIRT Defendants move for their dismissal based on insufficient service of process. (ECF No. 128 (citing Federal Rs. Civ. P. 4(m), 12(b)(5)).) This motion is granted.

However, Plaintiff proceeds *in forma pauperis* here, under 28 U.S.C.S. § 1915 (2022). (ECF No. 3.) So, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." 28 U.S.C.S. § 1915(d) (2022).

Based on review of the SAC, (ECF No. 105), the Court concludes official service of process is warranted, *see* 28 U.S.C.S. § 1915A (2022). Under Federal Rule of Civil Procedure 4(c)(1), waiver of service is requested from the individual SLC MCIRT defendants: Bennett, Johnson, Laughlin, St. Louis, and Thorton.

## III. ORDER

**IT IS HEREBY ORDERED** that:

**(1)** Defendant Salt Lake County's Motion to Dismiss is **GRANTED**, and SLC dismissed without prejudice. (ECF No. 106.)

**(2)** Defendant Salt Lake County's motion to depose Plaintiff is **DENIED**. (ECF No. 141.) Defendant SLC is no longer part of this action.

**(3)** For insufficient service, MCIRT Defendants' Motion to Dismiss is **GRANTED** and the MCIRT Defendants dismissed without prejudice. (ECF No. 128.)

**(4)** However, the Court's review of the Second Amended Complaint reveals that it warrants service upon MCIRT Defendants Bennett, Johnson, Laughlin, St. Louis, and Thorton. (ECF No. 105.)

**(5)** The Clerk of Court shall mail Notice of a Lawsuit and Request to Waive Service of a Summons, AO form 398 (for each defendant); 2 copies of Waiver of the Service of Summons, AO form 399 (for each defendant); copy of Second Amended Complaint, (ECF No. 105), and this Order to:

> **Salt Lake County Sheriff's Office**
> **Ms. Carita Lucey**
> **2001 S. State Street, Suite S2700**
> **Salt Lake City, UT 84190.**

**(6)** Defendants are cautioned that Federal Rule of Civil Procedure 4 requires Defendants to cooperate in saving unnecessary costs of service of summons and complaint. Under Rule 4, if Defendants do not waive summons service, after being asked by the Court to do so on Plaintiff's behalf, Defendants must bear service costs unless good cause be shown for not signing and

returning the waiver form. If service is waived, this action will proceed as if Defendants had been served on the day the waiver is filed, except that Defendants need not file an answer until **60 days** from the date when the waiver request was sent. *See* Fed. R. Civ. P. 4(d)(3). (This allows more days to respond than would be required if formal summons service is necessary.) Defendants must read the statement at the waiver form's end that more completely describes the party's duties about waiver. If service is waived after the deadline given in the Notice of a Lawsuit and Request to Waive Service of a Summons but before Defendants have been personally served, the Answer shall be due **60 days** from the date on which the request for waiver was sent or **20 days** from the date the waiver form is filed, whichever is later.

(7)  If Defendants do not execute waivers, attorneys for Defendants must file notices listing reasons waivers have not been given. Reports are due **30 days** from the date Requests were sent.

(8) Defendants shall answer the SAC, (ECF No. 105), observing the Federal Rules of Civil Procedure and litigation schedule in the Fifth Amended Scheduling Order.

DATED this 3rd day of March, 2023.

BY THE COURT:

JUDGE CLARK WADDOUPS
United States District Court